IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE CASEY CAMPBELL         Civil Action No. 4:21-cv-00881-P

# DEFENDANT WILLIAM ONUH'S MOTION TO ESTABLISH QUALIFIED IMMUNITY AS TO PLAINTIFF CAMPBELL'S PERSONAL CAPACITY CLAIMS

## I. Introduction

This case filed by federal employee Casey Campbell arises out of a dispute between Campbell and Defendant, Onuh, wherein Campbell contends he was subjected to illegal discrimination and violations of his civil rights, including his right to freely practice his religion, as an employee of the Federal Bureau of Prisons ("BOP"), due to illegal conduct by Defendant Onuh and other agents and employees of Defendant Garland.

Defendant Onuh now moves to establish qualified immunity as to Campbell's amended complaint. As explained below, the personal-capacity damages claims should be dismissed because defendant Onuh is entitled to qualified immunity as Campbell's allegations fail to show any violation of clearly established law and fail to state a claim for relief generally. For these reasons, and as discussed in more detail below, this case should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Background

1

In May 2017, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint, asserting that he was unlawfully discriminated against on the basis of religion on four separate occasions: (1) on February 5, 2017, Defendant Onuh allegedly made pejorative comments about Protestant chaplains, including Plaintiff, (2) on February 9, 2017, Defendant Onuh allegedly refused to escort non-Catholic volunteers into the institution, (3) on February 19, 2017, Defendant Onuh allegedly used his homily and discussion time at mass to call Protestant chaplains "liars," addressed them as boys, and made disparaging comments about Plaintiff's ministry, and (4) on March 9, 2017, another chaplain was allegedly forced to work overtime when Defendant Onuh refused to escort and supervise a Protestant activity to which he had been assigned. Ultimately, after an investigation, the Department of Justice's Complaint Adjudication Office issued a final agency decision in May 2019 finding that there had been discrimination, and issued a separate decision in September 2019 regarding damages for Plaintiff, including training for Defendant Onuh and for several named BOP supervisors, a restoration of Plaintiff's sick leave and annual leave allegedly used by Plaintiff to avoid Defendant Onuh, and $15,000 in compensatory damages and $1,000 in attorneys' fees. The BOP completed these required actions by the end of 2019.

In December 2019, Plaintiff submitted a new EEO complaint regarding the same allegations raised in his May 2017 EEO complaint, and attached his earlier-filed suit (*Campbell v. Garland, et al.*, 3:19-CV-1887-L) as an exhibit to his December 2019 EEO complaint. As the December 2019 EEO complaint raised the same issues as the prior EEO complaint, and these allegations were already the subject of a civil suit, the EEO complaint was dismissed by the Department of Justice in March 2020.

Onuh and Campbell are simply co-workers. Despite Campbell's irritation at what he

2

considers Onuh's insults and misconduct, Onuh has no authority over Campbell nor any supervisory capacity over Campbell's working conditions or workplace conduct.

### III.   Legal Standards

#### A.   Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

#### B.   Qualified immunity.

Public officials acting within the scope of their official duties are shielded from civil liability by the doctrine of qualified immunity. *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). Government officials are entitled to qualified immunity when their conduct "does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be "clearly established," a right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability therefore turns on the objective legal reasonableness of the defendant's actions in light of settled law at that time. *Hunter v. Bryant*, 502 U.S. 224, 228

(1991); *Harlow*, 457 U.S. at 818; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized."). Thus, government officials are immune from claims for damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638.

Qualified immunity is designed to balance the need to hold public officials accountable with the harm of litigation on the defendant-officials. *Harlow*, 457 U.S. at 814 ("These social costs [of litigation] include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office.") As a result, it is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original)(stating that qualified immunity is designed to avoid subjecting government officials to the costs of broad-reaching discovery, and includes "an entitlement not to stand trial or face the other burdens of litigation").

The Supreme Court has set forth a two-pronged test to assess qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Courts are free to decide which portion of the test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018). Under the first prong, the court must evaluate whether the facts alleged show the officer violated a constitutional right. *Saucier*, 533 U.S. at 201. If so, the court assesses the second question—whether the right was "clearly established" at the time of the official's conduct. *Id.*

The Supreme Court has recently permitted damages in a personal-capacity suit against a governmental official. *FNU Tanzin, et al. v. Tanvir*, et al., 141 S.Ct. 486, 489 (2020). The

4

*Tanvir* case has been cited favorably by Plaintiff, however, the *Tanvir* decision does not help this Plaintiff, because *Tanvir* further established qualified immunity applies to protect Defendant Onuh in this case. "Both the Government and respondents agree that government officials are entitled to assert a qualified immunity defense when sued in their individual capacities for money damages under RFRA. Indeed, respondents emphasize that the "qualified immunity defense was created for precisely these circumstances," and is a "powerful shield" that "protects all but the plainly incompetent or those who flout clearly established law," Tr. of Oral Arg. 42; see *District of Columbia* v. *Wesby*, 583 U. S., 138 S.Ct. 577, 589–591, 199 L.Ed.2d 453 (2018). In his 1st amended complaint, Campbell fails to assert any clearly established right that was violated by Onuh's alleged conduct. As co-equal coworkers, Onuh was not in a position of any authority to violate Campbell's rights. Campbell claims he was was discriminated against by Onuh, but only asserts Onuh made disparaging comments and/ or refused to escort certain inmates. Campbell wholly fails to tie these actions to any clearly established right or even describe how Onuh's stated opinion or inaction in his alleged escort duties was discriminatory to Campbell.

Once a defendant raises the qualified immunity defense, the burden of disproving an entitlement to immunity falls squarely on the plaintiff. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 175-76 (5th Cir. 2018). Yet given the strong public policy interests in the doctrine, defeating the defense is a high bar. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetentor those who knowingly violate the law.'" *Hunter*, 502 U.S. at 229 (quoting *Malley*, 475 U.S. at 341, 343). As a result, "'qualified immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Romero*, 888 F.3d at 176(quoting *Harlow*, 457 U.S. at 807).

**IV.     Argument and Authorities**

5

Defendant Onuh is entitled to qualified immunity as to Campbells claims against him in his personal capacity because Campbell's complaint identifies no clearly violated statutory or constitutional right and even if the complaint identifies such a violation, the complaint further fails to establish that such a right was clearly established at the time of the violation.

### A. Onuh as a personal-capacity defendant is entitled to qualified immunity.

A "plaintiff has the burdento negate the assertion of qualified immunity" once that defense has been raised. *Collier Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). To establish that qualified immunitydoes not apply, a plaintiff must show that (1) the defendant "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). The analysis may begin at either step—and can also end there if the plaintiff cannot carry his burden. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). That is the case here no matter where the analysis begins. At the "clearly established law" step, defendant Onuh is entitled to qualified immunity because Campbell fails to allege withthe necessary specificity the violation of any clearly established constitutional or statutory right. No clearly established law supports Campbell's claims. Further, because Plaintiff Campbell and Defendant Onuh are co-equal, co-workers as chaplains with neither having authority or supervisory capacity over the other, Campbell can not and has not shown Defendant Onuh has the capacity to substantially violate Plaintiff Campbell's religious exercise nor create any constitutional or statutory burden for Campbell.

Identifying clearly established law sufficient to negate the defense of qualified

immunity requires an "extraordinary showing" from a plaintiff. *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). "A right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)). "This inquiry 'mustbe undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. The plaintiff must identify some case giving notice that certain actions were required or forbidden "in the situation presented," *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018), by pointing to a "controlling precedent that squarely governs the specific facts at issue," *Morrow*, 917 F.3d at 876 (cleaned up).

Given these principles, the Fifth Circuit has stressed that the qualified-immunity analysis requires framing the relevant question "with specificity and granularity." *Morrow*, 917 F.3d at 874–75. Accordingly, just as a plaintiff cannot overcome qualified immunity on a Fourth Amendment claim by defining the relevant right as "the right to befree from unreasonable searches and seizures," *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015), Campbell's allegations that Onuh making disparaging comments or refusing to escort certain inmates violated federal law cannot suffice to overcome the defendant's qualified immunity. Campbell fails to define the matter with the necessary "specificity and granularity." *Morrow*, 917 F.3d at 874–75.

Campbell also has not identified, and cannot identify, any precedent from the Fifth

7

Circuit or the Supreme Court placing defendant on notice that his actions were in violation of the Constitution or any federal statute. Again, the burden is on the plaintiff to identify some clearly established law arising from sufficiently similar factual circumstances. *See, e.g., Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (explaining that the defendants were entitled to qualified immunity because the plaintiff had "not carried his burden of pointing this panel to any case that shows, *in light of the specific context of this case*, that the [defendants'] conduct violated clearly established law" (emphasis added)). Here, that would require showing that either the Fifth Circuit or the Supreme Court has squarely held that prison chaplains' disparaging comments or refusal to escort certain inmates violates the First and Fifth Amendments or any federal statute. In the absence of any such clearly established law, the personal-capacity claims against defendant Onuh should be dismissed.

Finally, given the timing of Defendant Onuh's alleged conduct, predating the Tanvir decision, the availability damages for an individual-capacity RFRA claim was not clearly established. Therefore, Defendant would have had no ability to appreciate the potential that his conduct could burden a co-equal, coworker's religious exercise or that he could be personally liable for it. Thus, the pathway upon which Campbell premises his action was not clearly established at the time of the alleged violation and must be denied.

**B.    Campbell Fails to show Onuh violated Campbell's constitutional or statutory rights**

To establish that qualified immunity does not apply, a plaintiff must show that (1) the defendant "violated a statutory or constitutional right" of the plaintiff's and that (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). To assert a violation under RFRA Campbell must

8

show Onuh substantially burdened a sincere religious exercise. (42 USC Section 2000 BB-1) Here, as Campbell's co-equal coworker Onuh is alleged have made disparaging comments and refused to escort certain inmate(s) as the basis for the suit. However, taken as true on their face, the allegations fail to establish any substantial burden on Campbell's religious exercise. Because Onuh's alleged conduct did not require to Campbell to take an action inconsistent with the free exercise of his faith the conduct does not constitute a substantial violation under RFRA.

## Conclusion

For all these reasons, Defendant Onuh is entitled to qualified immunity as to Campbell's damages claim and the Court should therefore dismiss Campbell's personal capacity complaints against Onuh. Defendant further request that costs be awarded against Campbell.

Respectfully submitted,

*/s/ William Onuh*
William Onuh
8435 Redhart Street
Arlington, Texas 76002
umuwada@yahoo.com

Defendant William Onuh, appearing *pro se* in his personal capacity

## CERTIFICATE OF CONFERENCE

I certify that on August 30, 2021, counsel for Plaintiff Casey Campbell indicated that he opposes this motion.

/s/ William Onuh
William Onuh

## CERTIFICATE OF SERVICE

On August 30, 2021, I submitted the foregoing document filing it in-person with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ William Onuh
William Onuh

10