UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE CASEY CAMPBELL            No. 4:21-cv-0881-P

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' Motion for Summary Judgment (ECF No. 133) and Plaintiff's Second Motion for Partial Summary Judgment (ECF No. 140). For the reasons listed below, the Court grants Defendants' Motion and denies Plaintiff's Motion.

## INTRODUCTION

This is a hostile work environment and employment discrimination case. Plaintiff Casey Campbell is a Baptist chaplain at the Federal Bureau of Prisons (the "BOP"). Campbell alleges a Catholic chaplain at the BOP, Defendant William Onuh, violated his religious rights and created a hostile work environment. Campbell also alleges that the BOP failed to take corrective action to resolve Onuh's complaints after an administrative decision instructed it to do so. Campbell thus also named the Attorney General as a Defendant, as head of the BOP.

Defendants move for summary judgment on all claims asserted by Campbell, contending that Campbell's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") fail. *First*, they assert that the evidence presented does not demonstrate a hostile work environment. *Second*, as to the religious discrimination claims, they assert that Campbell did not exhaust administrative remedies and cannot show an adverse employment action taken on a discriminatory or retaliatory basis. Defendants also argue that Campbell's Religious Freedom Restoration Act ("RFRA") claims fail because Title VII preempts them, and Campbell cannot show a substantial burden on his exercise of religion. In the same motion, the Attorney General individually moves for summary judgment on his counterclaim for monies previously paid to Campbell under an administrative decision that Campbell elected to relitigate *de novo* in this action.

Campbell moves for partial summary judgment on several discrete points. The Court ultimately concludes that none of his arguments are meritorious and accordingly denies Campbell's motion.

## BACKGROUND

This case has a convoluted procedural history that need not be exhaustively rehashed to rule on the present motions. The Court will give a brief synopsis of the essential background, including the administrative proceedings that predated this lawsuit, before turning to its analysis.

Campbell initiated this process by filing an administrative complaint with the BOP's internal Equal Employment Opportunity ("EEO") process in May 2017. He alleged that Onuh created a hostile work environment and violated Title VII by discriminating against Campbell based on his religion. ECF No. 58 ¶¶ 2–3. The allegations were investigated by an outside contractor. ECF No. 135-1 at 144–65. This investigation produced about 60 pages of materials, including written responses to interrogatories from BOP employees and Campbell, but not oral testimony or in-person hearings. *Id.* at 87–90, 141, 163–65. The Complaint Adjudication Office ("CAO")—an office within the DOJ's Civil Rights Division—considered the limited paper record and then issued a decision in May 2019 stating that the "record support[ed] a claim of harassment based on religion." ECF No. 58 at 30–55.[1] The CAO determined that Campbell was entitled to compensatory damages and attorneys' fees. *Id.* at 53–54. Then, in September 2019, the CAO determined Campbell was entitled to $15,000 in non-pecuniary damages, $1,000 in attorneys' fees, and the restoration of leave hours. ECF No. 135-1at 90–91.

Three months later, Campbell filed a second EEO complaint, alleging "the religious discrimination and relation against [him] continue[d]" and "no corrective action ha[d] been taken to stop Chaplain Onuh's illegal conduct." ECF No. 135-1 at 199. In March 2020, that second EEO

---

[1]To match the style of Defendants' brief, page references to Campbell's amended complaint are to the page numbers appearing at the top of each page, as generated by the ECF system. *See* ECF No. 134 at n.6.

2

complaint was administratively dismissed based on its overlap with this lawsuit. ECF No. 58 at 74–75.

As mentioned, this lawsuit has a tortured procedural history. In short, this case was transferred from the Dallas Division (when it was nearly a year old) and then consolidated with another existing lawsuit on the Court's docket. *See* ECF Nos. 50, 52. Relevant here, Campbell's operative pleading is his First Amended Complaint (ECF No. 58), wherein Campbell requests *de novo* review of the CAO final agency decision and asserts claims under both Title VII and RFRA. *See generally* ECF No. 58. Campbell seeks damages and declaratory/injunctive relief.

The crux of Campbell's claims stems from Onuh's allegedly hostile and discriminatory behavior on a multitude of occasions. A sampling of these allegations is sufficient to give a flavor of Campbell's complaints. Campbell alleges that during two masses held in 2017, Onuh stated during his homilies (at which Campbell was not present) that Campbell's Protestant ministry was "only entertainment" and referred to a supervisor chaplain as "that boy." ECF No. 135-1 at 166. He further alleges that Onuh sometimes refused to escort non-Catholic volunteers into the facilities. On occasion, Onuh also refused to supervise activities he was assigned to cover. *Id.* at 166. This sometimes resulted in other chaplains working overtime. Grievances like these form the basis of Campbell's EEO complaints and his claims presently before the Court. *See* ECF No. 58.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1). A fact is material if the governing law identifies it as having the potential to affect the suit's outcome. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). While the moving party "must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case." *Duffie v. United States*, 600 F.3d 362,

371 (5th Cir. 2010). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To show a genuine dispute as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986). The nonmoving party must show evidence sufficient to support the resolution of the material factual issues in their favor. *Anderson*, 477 U.S. at 249 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

## ANALYSIS

The Court will first address Defendants' Motion, starting with the request for summary judgment on Campbell's Title VII claims, followed by his RFRA claims. Then, the Court will analyze Defendants' request for summary judgment on the Attorney General's counterclaim. Finally, the Court will move to Campbell's Motion.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A. Defendants are entitled to summary judgment on Campbell's Title VII claims.**

Defendants contend that, reviewing *de novo*, Campbell's Title VII hostile work environment claim and his discrimination/retaliation claims fail. The Court agrees and grants summary judgment in Defendants' favor on these claims.

1. <u>Because Campbell requested *de novo* review, the questions of liability and remedy must be determined anew.</u>

Title VII allows a federal employee to bring a civil action if he is "aggrieved" by his employing agency's decision on his EEO complaint. 42 U.S.C. § 2000e-16(c). The employee may file two types of actions: (1) a suit to enforce the administrative decision, where courts examine only "whether the agency has complied with the decision," or (2) a suit for *de novo* review of the agency's decision. *Massingill v. Nicholson,* 496 F.3d 382, 384 (5th Cir. 2007). Campbell elected for *de novo* review. ECF No.

4

58 ¶ 19.[2] This entails *de novo* review of "both liability and remedy." *Massingill*, 496 F.3d at 385 (quoting *Scott v. Johanns*, 409 F.3d 466, 472 (D.C. Cir. 2005)); *see* ECF No. 152 at 20 (Campbell acknowledging that "all questions of liability and remedy must be determined anew based on the new record created in this litigation" (quoting ECF No. 134)). Accordingly, Campbell recognizes that "administrative findings are merely evidence—that, like any other evidence, can be accepted or rejected by the trier of fact—requires [the plaintiff to] put his employing agency's underlying discrimination at issue in the case." ECF No. 134 at 20 (quoting *Laber v. Harvey*, 483 F.3d 404, 421 (4th Cir. 2006)).

It is therefore undisputed that the underlying CAO decisions are merely evidence for the Court to consider in its review of Campbell's claims. Notably, the Parties engaged in extensive discovery that produced a record far more voluminous than the limited record available to the CAO. ECF No. 134 at 15. This includes about 60 hours of oral deposition testimony (the CAO had none), thousands of pages of document production (that were not considered by the CAO), and several rounds of written discovery (building upon the limited paper record available to the CAO). *See id.* The Court therefore has the benefit of considering the robust record produced during discovery to review Campbell's claims.

2. Campbell's arguments that Defendants made judicial admissions as to their liability are unfounded.

Campbell repeatedly asserts in his Response that Defendants' arguments are irrelevant because Defendants made judicial admissions to liability. Campbell is mistaken. He previously raised this argument in the brief supporting his first motion for summary judgment. *See* ECF No. 69 at 4–5, n.12. The Court rejected that argument and denied the motion. *See* ECF No. 81. This issue has been exhaustively briefed multiple times (*see* ECF Nos. 69 at 4–5; 72 at 17–20; 134 at 13–16; 161

---

[2]When Judge Lindsay granted Campbell leave to amend his pleadings (before this case was transferred and consolidated), he warned Campbell that the amended pleadings "must be limited to *either* an enforcement suit under the APA *or* a civil action seeking de novo review of the agency decision under Title VII, *but not both.*" ECF No. 31 at 4 (emphasis in original).

at 30; 163 at 1–3). That briefing solidifies the Court's conclusion that Campbell's argument that Defendants judicially admitted liability fails for two reasons.

*First*, in their discovery responses, Defendants acknowledged the contents of the CAO decisions, *see, e.g.*, ECF No. 60 ¶ 4 (statements in answer admitting that the CAO issued a decision and noting the contents of that decision), which Campbell suggests constitutes judicial admission. He is incorrect, however, because Defendants did not admit to liability by simply acknowledging the existence of the CAO decisions and their contents. *Second*, for similar reasons, posting the EEO notice at the prison does not constitute a judicial admission by Defendants. The notice merely summarized the CAO decisions and was posted at the direction of the CAO. Thus, reviewing *de novo*, the Court finds no reason to conclude that Defendants' actions constituted a judicial admission as to their liability in this dispute.

3. <u>Campbell's hostile work environment claim fails.</u>

Campbell's central Title VII allegations raise a hostile work environment claim. ECF No. 58 ¶¶ 36–167. To establish a prima facie hostile work environment claim, a plaintiff must show: (1) he belongs to a protected group, (2) he was harassed, (3) the harassment was based on his protected class, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Price v. Wheeler*, 834 F. App'x 849, 859 (5th Cir. 2020) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). The Court considers the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 859–60 (citation omitted).

Defendants contend that Campbell failed to allege a prima facie hostile work environment claim for three reasons: Campbell cannot show (a) actionable harassment, (b) a connection between the alleged harassment and his protected status, and (c) that management did not take action to remediate Campbell's concerns. ECF No. 134 at 16. The

Court addresses these arguments below and ultimately agrees with Defendants on each point. Campbell's failure to demonstrate a prima facie hostile work environment claim on these elements, even with the benefit of extensive discovery, provides several independent grounds for granting summary judgment for Defendants.

  *a. Campbell's allegations of harassment did not affect a term or condition of employment.*

Defendants' first argument cuts to the core of Campbell's claims: they contend Campbell was not subject to actionable harassment. The "legal standard for workplace harassment in this circuit is . . . high," regardless of the type of harassment alleged. *See Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) (allegations of discrimination based on disability). For alleged harassment to "affect a term, condition, or privilege of employment," it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotations and citations omitted). Determining whether a work environment is actionably hostile depends on a totality of circumstances. *See id.* This analysis "focus[es] on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). Defendants contend that Campbell failed to show that the alleged harassment affected Campbell's work performance, was severe or pervasive, or was physically threatening or humiliating. ECF No. 134 at 17–24. The Court agrees.

  i. <u>Lack of sufficient adverse impact on employment</u>

Defendants point to Campbell's excellent employment record to show that the allegedly hostile work environment did not adversely impact Campbell's employment. Campbell states he "has routinely been evaluated as an exemplary employee" at FMC Carswell. ECF No. 58 ¶ 37. Campbell's deposition testimony confirmed that he has always received positive performance reviews, has never been formally disciplined, and has consistently advanced up the company's career

advancement scale with corresponding pay increases, bonuses, and awards. ECF No. 135-1 at 15–19. This testimony is corroborated by Campbell's consistent "excellent" and "outstanding" ratings on his annual performance (which were not available to the CAO). *See* ECF No. 135-2 at 584–633.

Defendants contend that this evidence undermines Campbell's claims that the alleged hostile work environment adversely affected his job performance. ECF No. 134 at 22 (citing *Kenyon v. W. Extrusions Corp.*, No. 98-CV-2431-L, 2000 WL 12902, at *6 (N.D. Tex. Jan. 6, 2000)) (explaining that, although the court found the conduct at issue "offensive and despicable," the plaintiff failed to produce evidence showing she failed to perform her job, was discouraged from continuing to work, or failed to advance in her career as a result of the harassment). Campbell counters by offering only conclusory statements that his "hostile work environment affected the terms, conditions[,] and privileges of his employment." ECF No. 161 at 33. He cites no evidence or authority to support his contention and instead relies on the already-rejected argument that Defendants admitted liability. *See id.* at 33–34.

Campbell's argument does not cut the mustard; his conclusory statements that the hostile work environment negatively impacted his job performance is insufficient to demonstrate that Defendants' conduct was objectively and subjectively hostile or abusive, so much so that he was unable to succeed in the workplace. The Court thus agrees with Defendants and concludes that this factor weighs against finding that the alleged harassment affected a term or condition of Campbell's employment.

  ii. <u>Conduct was not sufficiently severe or pervasive</u>

Defendants next contend that the alleged harassment was not so severe or pervasive that it altered the conditions of Campbell's employment. ECF No. 134 at 17. For harassment to be severe or pervasive enough to be actionable under Title VII, the conduct must be both subjectively and objectively offensive. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). In other words, the Court considers

whether a reasonable person would find the conduct hostile and abusive and asks whether the victim perceived the conduct as such. *See id.*

To be sure, Campbell perceived Defendants' actions to be hostile and abusive. *See generally* ECF No. 134 at 17 (describing Defendants' allegedly hostile and abusive behavior). So, the central question here is whether a reasonable person would similarly find Defendants' conduct hostile and abusive.

Accepting Campbell's allegations as true, Onuh's workplace sins were primarily ones of omission. For example, Onuh "regularly l[eft] work early," and Onuh's behavior caused other chaplains at the BOP, including Campbell, "to temporarily perform tasks that Campbell thought Onuh should have done." ECF No. 134 at 17 (citing ECF No. 135-1 at 29–42, 61–63, 128–34). Some of those tasks include "escorting volunteers, locking or unlocking doors, or performing other administrative-type tasks." *Id.* But the evidence reflects that these sorts of tasks were expected to be performed by any BOP chaplain. *Id.* (citing *id.* at 6–7). And even if not, Campbell has neither produced evidence nor caselaw supporting his contention that a reasonable person would find Onuh's alleged shirking of his work responsibilities sufficiently hostile and abusive to constitute a Title VII violation.[3]

Campbell's complaints against Onuh fall well short of his burden of proving that Onuh's conduct is subjectively and objectively hostile and abusive to be actionable under Title VII. And because Campbell identifies no caselaw demonstrating that the dynamic between Campbell and Onuh creates an actionable hostile work environment claim, the Court concludes that this factor also weighs against finding that the alleged harassment affected a term or condition of Campbell's employment. *See* ECF No. 161 at 32–35.

---

[3]Defendants correctly point out that in many instances, Campbell's complaints against Onuh have no connection to Campbell. *See* ECF No. 164 at 4. Because Campbell fails to delineate how Onuh's actions that did not affect Campbell created a hostile work environment for *Campbell*, the Court rejects his argument on those points.

    iii.    <u>Conduct was not physically threatening or humiliating</u>

Defendants next contend that none of the alleged conduct was physically threatening or humiliating. ECF No. 134 at 20–21 (citing *Weller*, 84 F.3d at 194). Indeed, Campbell confirmed that Onuh was never physically violent with him or engaged in any kind of mean-spirited practical joke. ECF No. 134 at 64–65. *Cf. La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 476, 482 (5th Cir. 2002) (holding that a plaintiff showed his supervisor's harassment was physically humiliating where the supervisor inappropriately touched his private parts and spat tobacco juice on him). Accordingly, this factor weighs against Campbell's hostile work environment claim as well.

Because the factors weigh against finding that Campbell was subject to work in a hostile environment, the Court concludes that Campbell fails to allege actionable harassment. *See Ramsey v. Henderson*, 286 F.3d 264, 268. Summary judgment for Defendants is therefore granted on this claim.

    *b. Campbell's claim is not connected to a protected status.*

Defendants next challenge Campbell's assertions that he was harassed because of his Baptist religion. They argue nearly all of Onuh's objectionable behavior is disconnected from Campbell's status as a Baptist. ECF No. 134 at 24. Prior emails produced during discovery did not suggest that Onuh was "engaged in some form of religious discrimination against Campbell (as opposed to just personally disagreeable or uncivil behavior)." (ECF No135-1 at 179–82). As discussed above, Campbell alleges that Onuh shirked work and performed poorly. But there is no evidence that Campbell's Baptist status somehow caused or motivated Onuh to behave in that way. ECF No. 134 at 25.

Campbell offers only a perfunctory, conclusory response to this argument. ECF No. 161 at 31–32. He argues that he is Baptist and "suffered an adverse employment action when BOP denied him preferential treatment that Defendant Onuh was allowed because of Campbell's religion." *Id.* at 32. Without supporting evidence, he complains that the "denial of favored job conditions given to Onuh"

constitutes an adverse employment action taken against Campbell because he is Baptist. *Id.* Campbell leans again on the inapposite argument that the Final Agency Decision is a binding admission of liability, which the Court again rejects. *Id.* at 33.

Because Campbell presented no competent summary judgment evidence that the harassment complained of was based on his Baptist status, Campbell's Title VII claim also fails under this element.

### c. The BOP responded to Campbell's complaints.

Defendants assert that even though the of which conduct Campbell complains does not constitute actionable harassment, the BOP nevertheless took steps to minimize contact between Campbell and Onuh. ECF No. 134 at 25. Defendants specifically note that Campbell and Onuh's "work schedules have not substantially overlapped over the years—particularly [considering that] essentially all chaplains work Sundays but are busy doing inmate services and other activities such that they do not have much interaction." ECF No. 134 at 25 (citing ECF No. 135-1 at 24–25, 73, 289–305). Additionally, in recent years, when "Campbell and Onuh have been scheduled to work on the same days, one has been assigned to the camp facility while the other will be assigned to the main facility, thus further ensuring that they are not continually working in the same area." *Id.* (citing ECF No. 135-1at 120–21). Campbell does not meaningfully respond to this argument. *See* ECF No. 134 at 32–35. Therefore, even if Campbell had demonstrated an actionable Title VII claim, he fails to rebut Defendants' assertion of actions adequate to remedy his complaints.

### 4. Campbell's religious discrimination/retaliation claims fail.

Finally, though the Complaint is less than artfully drafted, Campbell's pleading may allege religious discrimination or retaliation claims. He alludes to discrete adverse employment actions (such as a failure to hire or promote) that are ostensibly distinct hostile work environment claims. While the former entails specific instances of discrimination, the latter involves a more prolonged course of conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts.").

Specifically, Campbell alleges that he was not selected to be a supervisory chaplain at FMC Carswell in 2015, and he vaguely suggests he should have been placed in some unspecified "special rate" or "retention pay" position carrying a higher salary. *See* ECF No. 135-1 at 26–29, 122–25. Campbell asserts that failure to promote because the warden allegedly told him to stop complaining about Onuh or other issues in the Religious Services department. *Id.* at 26–29. Campbell acknowledged, however, that he did not file an EEO complaint about not being selected, and "[t]he person whom they selected is a white Protestant male who graduated" from the same seminary as Campbell, evidencing that there was any possible discrimination was not based on Campbell's religion. *Id.* at 27–28.

Defendants assert that these types of accusations are properly considered discrete adverse employment acts. *See* ECF No. 134 at 26 (citing *Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.")). Defendants thus move for summary judgment on Campbell's ostensible discrimination or retaliation claims, as distinct from his hostile work environment claims. *Id.* (citing *EEOC v. USF Holland, LLC*, No. 3:20-CV-270-NRB-RP, 2021 WL 4497490, at *2 (N.D. Miss. Sept. 30, 2021)) ("Failure to hire is a 'discrete act' which is easy to identify and distinguished from hostile work environment claims . . . ."). Defendants argue, however, that such claims are barred because Campbell failed to timely exhaust his administrative remedies, and he failed to establish a prima facie case. ECF No. 134 at 28. Campbell almost entirely ignores Defendants' arguments on these points in his Response.

Before suing in federal court under Title VII, a federal employee asserting a claim of employment discrimination must first exhaust administrative remedies by complying with the EEO regulations set forth in 29 C.F.R. § 1614.105 *et seq. See Thomas v. Napolitano*, 449 F. App'x 373, 374–75 (5th Cir. 2011). These regulations require a federal employee claiming discrimination to contact an EEO counselor about the alleged incident "within 45 days of the date of the matter alleged to be discriminatory" and then file an administrative EEO complaint if the

issue is not resolved through the counseling process. 29 C.F.R. §§ 1614.105(a)(1), 1614.106(a). Generally, "absent a defense of waiver, estoppel, or equitable tolling," failure to timely notify the EEO bars such a claim from proceeding. *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).

Campbell indicated he was not promoted to supervisory chaplain in 2015, but he did not file an EEO complaint until years later, in 2017. Even then, his tardy complaint neglected to mention the allegedly discriminatory failure to promote him to supervisory chaplain. Because Campbell did not timely initiate the EEO process on his failure-to-promote claim, that claim is barred. *See id.*

So too for Campbell's vague claim that he should have been placed on a "special rate," "retention pay," or other similar position. Campbell failed to show that he applied for any positions that would entitle him to these benefits. Nor did Campbell demonstrate that he initiated—let alone exhausted—an EEO complaint on this lack-of-benefits claim. *See* ECF No. 134 at 29.

Finally, Campbell presented no evidence showing he is entitled to a defense of waiver, estoppel, or equitable tolling. Because he never filed an EEO complaint addressing his failure-to-promote and his lack-of-benefits claims, these defenses are inapplicable. *See, e.g.*, *Eberle v. Gonzales*, 240 F. App'x 622, 627 (5th Cir. 2007) ("[The]doctrine of equitable tolling does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely when they discover instances of disparate treatment of other employees months or years after their discharge." (citation and quotation omitted)).

Because the Court concludes these claims were not administratively exhausted and thus barred from proceeding, the Court declines to undertake the *McDonnel Douglas* analysis to determine whether Campbell pleaded a prima facie case. Defendants are therefore entitled to summary judgment on Campbell's Title VII claims.

### B. Defendants are entitled to summary judgment on Campbell's RFRA claims.

Defendants also move for summary judgment on Campbell's RFRA claims, arguing that these claims are preempted by Title VII.

"[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 330–31 (5th Cir. 2021) (quoting *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996)). When "both the RFRA and Title VII claims that [a federal employee] plaintiff has alleged in [his] complaint are based on identical facts . . . the RFRA claims plaintiff has asserted against [the federal agency] defendants are preempted by the Title VII claims asserted against those same defendants." *Tagore v. United States*, No. H-09-0027, 2009 WL 2605310, at *10 (S.D. Tex. Aug. 21, 2009) (explaining the interaction between Title VII and RFRA and the corresponding caselaw).

Here, Campbell relies on the same factual allegations for both his RFRA and Title VII claims. *Compare* ECF No. 58 ¶ 168 (relying on the allegations in paragraphs 20 through 147 for Campbell's Title VII claims), *with* ¶ 174 (relying on the allegations in those exact same paragraphs for his RFRA claims). Thus, Defendants argue that Campbell's RFRA claims are directly related to his Title VII claims, so his RFRA claims are preempted by Title VII. ECF No. 134 at 40.

In response, Campbell did not cite a single case permitting a RFRA claim for religious discrimination in federal employment, nor is the Court aware of any. *See, e.g.*, *Holly v. Jewell*, 196 F. Supp. 3d 1079, 1088 (N.D. Cal. 2016) (collecting district court cases from across the country holding that Title VII preempts a federal employee's RFRA claim). Campbell's two-sentence conclusory counterargument is insufficient to pass muster. He merely states that he "is employed by the [BOP], not by Defendant Onuh," ECF No. 161 at 34, and consequently concludes that because Onuh is not his employer, Defendants' preemption defense fails. But he cites no evidence or authority to support his conclusory arguments. The Court therefore finds that Defendants are entitled to summary judgment also on Campbell's RFRA claims.

### C. The Attorney General is entitled to summary judgment on his counterclaim to recover monies paid to Campbell.

Finally, Defendants assert that the Attorney General is entitled to summary judgment on his counterclaim for the monies paid to Campbell pursuant to the CAO decisions. *See* ECF No. 60. The Attorney General asserts that a federal agency may pursue such a counterclaim in a *de novo* employment-discrimination case to "offset against any recovery by [the plaintiff] and judgment against [the plaintiff] if no liability is found or the offset is greater than the recovery." *Massingill*, 496 F.3d at 386–87; *see also Smith*, 341 F. App'x at 37 (acknowledging that if a *de novo* review finds no liability or a lower award is granted, the agency can counterclaim against the plaintiff "to recover the amounts paid in excess of the ultimate award").

Here, the uncontested evidence shows Campbell received $15,000 in non-pecuniary damages and $1,000 in attorneys' fees from the BOP, as awarded by the CAO. *See* ECF No. 14 at 6, 17; *see also* ECF No. 135-1 at 90–91. The Attorney General contends that he is entitled to recover the $16,000 in total monies paid to Campbell at the administrative level. *See* ECF No. 134 at 44–45 (citing *Massingill*, 496 F.3d at 386–87). Multiple cases to support the Attorney General's position. *See, e.g.*, *Hodge*, 257 F. App'x at 730 (affirming grant of federal agency's counterclaim in a *de novo* employment-discrimination case to recover funds paid to the plaintiff in accordance with the challenged EEOC award, as the plaintiff had demonstrated no error in granting summary judgment against her on her discrimination and retaliation claims, and the EEOC had awarded her the funds in dispute based on those claims); *Young v. Buttigieg*, No. 19-CV-01411-JCS, 2022 WL 1471416, at *4–6 (N.D. Cal. May 10, 2022) (denying plaintiff's motion to dismiss federal agency's counterclaims in a *de novo* employment-discrimination case to recover funds paid to the plaintiff in accordance with an EEOC award, in large part as "there is no dispute that [the plaintiff] would owe the government money if she does not").

Campbell entirely ignores the Attorney General's argument that the Attorney General would be entitled to summary judgment if the Court found no liability in its *de novo* review. *See* ECF No. 161. At most,

15

Campbell makes a cursory reference in the brief supporting his own dispositive motion to his alleged efforts to mitigate damages. *See* ECF No. 141 at 38. This single paragraph merely states that "Campbell took every opportunity to mitigate his damages" without pointing to any substantiating evidence. *Id*. Thus, absent evidence to the contrary, the Court concludes that Campbell did not mitigate his damages.

The Court reviewed Campbell's claims for hostile work environment, religious discrimination and retaliation, and RFRA violations *de novo*. Because the Court granted summary judgment against Campbell on each of these claims, the Court concludes there is no basis for liability for Campbell's claims against Defendants. Thus, the Court grants summary judgment for the Attorney General on his counterclaim to recover the monies paid to Campbell due to the CAO decisions. The Attorney General is therefore entitled to recover $15,000 in non-pecuniary damages and $1,000 in attorneys' fees paid to Campbell in the earlier administrative proceedings. *See* ECF No. 14 at 6; *see also* ECF No. 135-1 at 90–91.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Campbell's brief in support of his Motion for Partial Summary Judgment is heavy on verbiage but light on substance. *See* ECF No. 141. The 38-page brief contains just seven pages of analysis and zero convincing arguments. *See id*. at 32–38. The Court addresses and disposes of each in turn.

*First*, Campbell repeats the tired argument that "the final agency decision here is not mere evidence, [but is instead] a judicial admission." *Id*. at 33, 35–37. The Court rejected this argument multiple times, both in a previous order denying Campbell's first dispositive motion, (ECF No. 81), and in the analysis of Defendants' Motion above. The Court declines to rehash its analysis and merely incorporates its reasoning and conclusion detailed above. In short, Campbell's argument holds no water.

*Second*, Campbell offers a terse argument for summary judgment on his hostile work environment claim. *See id*. at 34–35. After reciting the elements for such a claim, Campbell lists a handful of conclusory

statements to bolster his argument. *See id.* But his statements amount to little more than threadbare recitations of the elements of a hostile work environment claim reconfigured to include the Parties' names. He cites: two distinguishable cases (one of which is out-of-circuit), the CAO decision, Defendants' Answer, an old Motion to Dismiss from an earlier case, and Onuh's Motion to establish qualified immunity. *Id.* at 35–36. None of these constitute sufficient or persuasive summary judgment evidence or authority. The dearth of supporting evidence is particularly noteworthy because the Parties engaged in extensive discovery in this case, as detailed above. The Court thus summarily denies Campbell's Motion on this claim.

*Third*, Campbell counters Defendants' contention that Title VII preempts his RFRA claim. *See id.* at 37–38. In his three-sentence argument, Campbell posits that the evidence in this case shows conclusively that he is employed by the [BOP], not by Defendant Onuh. *Id.* Campbell cites no evidence or authority to support this contention. The Court therefore incorporates its analysis on this point where it granted summary judgment for Defendants on its preemption argument. The Court therefore denies Campbell's Motion on this claim.

*Finally*, Campbell contends that Defendants' mitigation of damages affirmative defense is not supported by evidence. He argues that this "defense requires an injured party, following a breach, to exercise reasonable care to minimize his damages" using reasonable efforts. *Id.* at 38. Campbell then argues, again without citing any evidence or authority, that "the evidence here on mitigation is conclusive that there was a failure to mitigate, as Campbell took every opportunity to mitigate." *Id.* But Campbell fails to detail how he ostensibly mitigated damages. *See id.* The Court therefore denies Campbell's Motion on this claim as well.

## ORDER

For the reasons detailed above, the Court rules as follows:

Defendants Merrick B. Garland and William Onuh's Motion for Summary Judgment (ECF No. 133) is **GRANTED.** Accordingly, Plaintiff Casey Campbell's hostile work environment, religious

discrimination, retaliation, and RFRA claims are each **DISMISSED with prejudice.**

Defendants' Motion for Summary Judgment on the Attorney General's counterclaim is **GRANTED.** The Court therefore **ORDERS** the Attorney General is entitled to recover the $15,000 in non-pecuniary damages and $1,000 in attorneys' fees paid to Campbell as a result of the prior administrative decisions.

Finally, Plaintiff Casey Campbell's Second Motion for Partial Summary Judgment (ECF No. 140) is **DENIED.**

**SO ORDERED** on this **16th day** of **September 2022.**

_____
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE